**Patricia HENKEMEYER, as Trustee for the Heirs and Next of Kin of Peter C. Jansky, Deceased, Appellant,**

v.

**David W. BOXALL, Respondent.**

**No. C2-90-1796.**

Court of Appeals of Minnesota.

Feb. 5, 1991.

Review Denied March 27, 1991.

Roger J. Nierengarten, Hall, Byers, Hanson, Steil & Weinberger, P.A., St. Cloud, for appellant.

Donna J. Blazevic, Bassford, Heckt, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for respondent.

Considered and decided by SHORT, P.J., and DAVIES and POPOVICH *, JJ.

## OPINION

DAVIES, Judge.

Appellant commenced what appeared to be a medical malpractice action for failure to discover and advise decedent Jansky of the presence of an acute aneurysm. Appellant conceded no physician-patient relationship existed, but argued application of ordinary negligence principles precluded dismissal. The trial court granted summary judgment, concluding lack of a physician-patient relationship barred appellant's claim as a matter of law. We affirm.

## FACTS

On August 3, 1987, Peter Jansky was injured driving a truck for Brian Brix Excavating Company. Twenty months later, Brix and its workers' compensation carrier required Jansky to undergo an adverse medical examination to determine the extent of his injuries. Respondent Dr. David Boxall conducted an orthopedic evaluation of Jansky's spine, shoulder, and hip on April 27, 1989. At no time was respondent retained by Jansky, his employer, or its workers' compensation carrier for any medical treatment. After obtaining Jansky's medical history, examining medical and hospital records, and reviewing X-rays he ordered, respondent Boxall concluded Jansky's orthopedic problems were the same in April 1989 as they were before the August 1987 accident. Respondent made a report to that effect to the workers' compensation carrier on May 3, 1989. On May 6, 1989, Jansky died of an acutely expanding abdominal aortic aneurysm.

---

* Retired chief justice acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10, and Minn.Stat. § 2.724, subd. 3 (1990).

Appellant Patricia Henkemeyer, as trustee for the heirs of Jansky, commenced this action, alleging respondent failed to exercise the requisite care and skill of a physician by not identifying the aneurysm on the April 1989 X-ray and warning Jansky of its danger. Appellant made an offer of proof that the aneurysm is clearly detectable on the X-ray.

On April 26, 1990, respondent moved for dismissal for failure to state a claim upon which relief can be granted, claiming no physician-patient relationship existed between Jansky and respondent. The trial court treated the motion as one for summary judgment and on June 4, 1990, dismissed the case. The trial court concluded appellant's claim of negligence against respondent was barred as a matter of law because no physician-patient relationship existed.

## ISSUE

Did the trial court err in granting summary judgment in favor of respondent in the absence of a physician-patient relationship?

## ANALYSIS

On appeal from summary judgment the reviewing court determines whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). The existence of a legal duty is a question for the court to determine as a matter of law. *Larson v. Larson*, 373 N.W.2d 287, 289 (Minn.1985).

As a preliminary matter, a procedural issue arises whether the trial court properly granted summary judgment sua sponte. Respondent moved for dismissal for failure to state a claim upon which relief can be granted; the trial court, however, entered summary judgment in respondent's favor. Minn.R.Civ.P. 12.02(e) provides that if the trial court accepts matters outside the pleadings, a motion to dismiss for failure to state a claim may be treated as one for summary judgment. Here, appellant conceded in her memorandum opposing the motion to dismiss that no physician-patient relationship existed. Hence, the trial court properly treated the motion as one for summary judgment.

■ Generally, a physician is liable for malpractice only where there is a physician-patient relationship. *McElwain v. Van Beek*, 447 N.W.2d 442, 445 (Minn.App. 1989), *pet. for rev. denied* (Minn. Dec. 20, 1989). Minnesota appellate courts have not faced the issue of a physician's duty to a claimant who is examined adversely to determine eligibility for workers' compensation benefits, but those jurisdictions that have addressed the issue are uniform in holding that under such circumstances a physician-patient relationship does not arise and therefore no claim for medical malpractice exists. *See Keene v. Wiggins*, 69 Cal. App.3d 308, 313–14, 138 Cal.Rptr. 3, 7–8 (1977); *Rogers v. Horvath*, 65 Mich.App. 644, 647, 237 N.W.2d 595, 597 (1975); *Craddock v. Gross*, 350 Pa.Super. 575, 581, 504 A.2d 1300, 1303 (1986), *app. denied* (Pa. Sept. 23, 1986). In the absence of a physician-patient relationship, the doctor's only duty is to conduct the examination so as to not cause harm to the patient. *Keene*, 69 Cal.App.3d at 313, 138 Cal.Rptr. at 7. There is no claim that respondent injured Jansky during the April 1989 medical examination.

■ We conclude that, based on *Keene*, *Rogers* and *Craddock*, the trial court properly found that no physician-patient relationship existed between respondent and Jansky. Accordingly, we hold the trial court's grant of summary judgment was correct as a matter of law.

Appellant's argument that her cause of action rests on ordinary negligence principles and does not constitute a medical malpractice claim is appealing, but it is without precedential support. The logic of appellant's position derives some support from Minn.Stat. § 604.05, subd. 1 (1990). This statute, enacted in 1983, now reads:

Subdivision 1. Duty to assist. Any person at the scene of an emergency who knows that another person is exposed to or has suffered grave physical harm shall, to the extent that the person can

do so without danger or peril to self or others, give reasonable assistance to the exposed person. Reasonable assistance may include obtaining or attempting to obtain aid from law enforcement or medical personnel. Any person who violates this section is guilty of a petty misdemeanor.

This provision requires a stranger to come to the aid of a person "exposed * * * to grave physical harm." Although respondent did not have a duty to Jansky based on a physician-patient relationship, appellant would not offend common sense by saying he at least had the duty of a stranger.

We note, of course, that medical care providers are specifically written out of Minn.Stat. § 604.05. That does not mean a parallel liability could not be imposed as a matter of common law. The recognition of such a claim, in the face of all precedent, is, however, not within the prerogatives of this intermediate court.

In essence, appellant tries to convert a medical malpractice claim into one based on common law negligence. Medical malpractice has been defined as

the failure of a physician and surgeon to exercise the care and professional skill usually exercised by the ordinary member of his profession in good standing in the same or similar locality.

*Manion v. Tweedy*, 257 Minn. 59, 66, 100 N.W.2d 124, 129 (1959). *See Manion*, 257 Minn. at 67, 100 N.W.2d at 130 ("[This] instruction[ ] embod[ies] [an] applicable rule[ ] pertaining to the liability of a physician for malpractice.").

■ Appellant's complaint alleges respondent's failure to discover the aneurysm or inform Jansky of the aneurysm's existence

was a failure to exercise that degree of care and skill which is ordinary among physicians and surgeons practicing in the State of Minnesota or like localities, because in the use of ordinary skill and care, the aneurysm could easily have been discovered and proper medical advice given to decedent Jansky * * *.

As is plain from the complaint's language, appellant is alleging no more than that respondent breached his professional duty by incorrectly evaluating the X-rays or, perhaps, by choosing not to call attention to the danger apparent thereon. Thus, respondent's negligence occurred, if at all, as a result of failing to exercise a sufficient degree of professional skill as a doctor. Because the facts of this case support only an action for medical malpractice, a claim under ordinary negligence principles is unsustainable. *See Sexton v. Petz*, 170 Mich. App. 561, 566, 428 N.W.2d 715, 717 (1988) (holding negligence and gross negligence claims were merely restatements of plaintiff's malpractice action and hence summary judgment was proper).

Finally, we note that appellant's reliance upon *Depue v. Flatau*, 100 Minn. 299, 111 N.W. 1 (1907), is inappropriate. In *Depue* the supreme court held that the defendants breached a duty of reasonable care when they sent a seriously ill business guest out into the cold in his cutter. *Id.* at 304, 111 N.W. at 3. Defendants in *Depue*, unlike respondent in this case, made affirmative actions against the guest upon which their liability rested. In the present case, respondent took no affirmative actions against Jansky. Respondent contracted with Brian Brix's workers' compensation provider, not Jansky. Further, respondent was not retained to treat Jansky, and neither offered nor intended to treat or care for Jansky.

## DECISION

Because no physician-patient relationship existed between respondent and Jansky, the trial court properly granted summary judgment in favor of respondent.

Affirmed.

SHORT, J., concurs specially.

SHORT, Judge (concurring specially).

I concur in the majority opinion only insofar as it concludes a claim for professional negligence against a physician cannot be sustained in the absence of a physician-patient relationship.