**Steven LOUIS, et al., Respondents,**

v.

**Robert LOUIS, Petitioner, Appellant.**

**No. C3–00–1325.**

Supreme Court of Minnesota.

Dec. 6, 2001.

Thomas A. Gilligan, Jr., St. Paul, for the appellant.

David G. Johnson, Prior Lake, for the respondent.

## OPINION

GILBERT, Justice.

This case involves a landowner's contention that there is no duty of care owed to someone invited onto his land unless a special relationship exists between the landowner and the entrant. The district court ruled in favor of appellant, Robert Louis, on his motion for summary judgment and the court of appeals reversed and remanded. We affirm, although we do so on different grounds than those cited by the court of appeals.

The facts relevant to this appeal are undisputed. In the spring of 1995, appellant, Robert Louis, purchased a used aboveground swimming pool. He also purchased the deck surrounding the pool as well as a 7-foot water slide and a jump board that were attached to the deck. He installed the pool, deck, slide, and jump board in his backyard by himself. The deep end of the pool was approximately 6 feet deep while the shallow end of the pool was approximately 3 ½ feet deep.

Appellant decided to attach the slide to the deck above the shallow end of the pool. He did so because he and his wife did not want to worry about young children going down the slide into the deep end of the pool. The jump board was attached to the deck above the deep end of the pool and there were two signs on the edge of the pool stating "Danger—Do Not Dive."

Appellant believed that it was dangerous to dive into the pool but did not think there was any danger in going down the slide either feetfirst or headfirst. He believed the angle of the slide made the

entry into the water from the slide more horizontal than a dive would, causing one to skim across the top of the water rather then enter the water vertically as one would in a dive. While no one had complained to appellant about hitting the bottom of the pool from going down the slide, appellant believed heel marks he had noticed on the bottom of the pool were from people going down the slide feetfirst, but he did not know this for a fact.

On August 2, 1997, appellant hosted a gathering of family members at his home. He allowed his guests to use the swimming pool, jump board, and slide. A handmade sign was posted indicating no diving but no warnings about using the slide were posted. Appellant's brother, respondent Steven Louis, was among those present at appellant's home. Respondent had been in appellant's pool one prior time but had never used the slide before.

Respondent observed mostly children playing in the pool during the day but at all times saw a few adults in the pool as well. He watched children go down the slide throughout the day doing headfirst "belly slides." He also saw David Louis, a brother to both respondent and appellant, do a headfirst belly slide. Appellant, who normally did not instruct or orient guests about the use of the slide, told his brother David earlier in the day about a sticker on the slide indicating the proper way to do a belly slide and had told David that he could do such a slide. A diagram on the sticker included a picture of a figure going down the slide headfirst and included the words "Correct belly slide: Head up, arms straight ahead, fingers pointing up."

After respondent observed David's headfirst slide, David told respondent that it was fun and to "give it a try." Respondent then decided to go down the slide. He was going to slide down feetfirst until he saw the same diagram on the slide that appellant had pointed out to David. After seeing this diagram, respondent attempted to imitate the position of the figure and went down the slide headfirst. He hit the water and then the bottom of the pool, resulting in a burst fracture of his C6 vertebrae.

Respondent, who is 5'8" tall, admitted that he knew before going down the slide that the depth of the water at the end of the slide was about waist high on him, which he later learned was 3 ½ feet deep. At the same time, respondent did not fear for his or anyone else's safety and he did not caution anyone, including his own children, about going down the slide headfirst. He never told appellant either before or after the accident that he felt the slide was unsafe.

Respondent sued appellant alleging negligence. Appellant moved for summary judgment arguing that (1) he owed no duty to respondent because there was no special relationship between them, and (2) that respondent had primarily assumed the risk of harm. The district court denied appellant's motion as to primary assumption of the risk, finding that genuine issues of material fact existed. However, the court then held that appellant was entitled to summary judgment, concluding that he did not owe a duty of care to respondent because there was no evidence that appellant had actual or constructive knowledge of the danger associated with doing headfirst belly slides into his swimming pool.[1]

1. The district court correctly stated that a "plaintiff must prove the landowner had actual or constructive knowledge of a dangerous condition to establish a landowner's duty to use reasonable care." (citing *Messner v. Red Owl Stores*, 238 Minn. 411, 415, 57 N.W.2d 659, 662 (1953)). However, the district court then stated that whether the appellant owed a duty was dependent on his knowledge of a dangerous *situation* instead of a dangerous

Respondent appealed the district court's holding on the duty of care issue and appellant cross-appealed the court's denial of summary judgment based on primary assumption of the risk. The court of appeals affirmed the district court's denial of summary judgment based on primary assumption of the risk but reversed the district court's holding on the duty of care issue. In doing so, the court of appeals held that there was a genuine issue of material fact for the jury to decide whether appellant owed respondent a duty to warn him of the dangers associated with sliding headfirst into the shallow end of the pool. Specifically, the court of appeals concluded that the sticker on the slide instructing how to do a headfirst belly slide into the pool presented appellant with at best contradictory information about the safety of such a slide. The sole issue brought before this court is whether appellant owed a duty of care to the respondent.[2]

■ Summary judgment is appropriate when a district court determines that "there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. We review a district court's grant of summary judgment to determine whether there are any genuine issues of material fact and whether the court erred

in its application of the law. *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995). On appeal, we view the evidence in the light most favorable to the party against whom the motion for summary judgment was granted. *Id* . A defendant in a negligence action is entitled to summary judgment when the record reflects a complete lack of proof on any of the four elements necessary for recovery: (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) the breach of that duty being the proximate cause of the injury. *Id.*

■ Any legal analysis of an action brought against a landowner alleging negligence must begin with an inquiry into whether the landowner owed the entrant a duty. *Baber v. Dill,* 531 N.W.2d 493, 495 (Minn.1995). Generally, the existence of a legal duty is an issue for the court to determine as a matter of law. *Larson v. Larson,* 373 N.W.2d 287, 289 (Minn.1985). Since 1972, we have consistently held that a landowner has a duty "'to use reasonable care for the safety of all such persons invited upon the premises.'" *Sutherland v. Barton,* 570 N.W.2d 1, 7 (Minn.1997) (quoting *Peterson v. Balach,* 294 Minn. 161, 174, 199 N.W.2d 639, 647 (1972)). The landowner has this duty regardless of whether the entrant is a licensee or an invitee.[3]

*condition.* In doing so, the district court erroneously focused on whether the appellant had actual or constructive knowledge of the danger associated with doing headfirst belly slides rather than whether he had knowledge of the dangerous condition(s). *See Messner,* 238 Minn. at 415, 57 N.W.2d at 662 (stating that the plaintiff has the burden of proving either that defendant caused the dangerous *condition* or that he knew, or should have known that the *condition* existed) (emphasis added). There is no dispute that the appellant constructed, and therefore had knowledge of, the conditions at issue in this case— the pool and the slide.

**2.** Appellant did not petition this court for review of the district court's determination that the doctrine of primary assumption of the risk did not bar respondent's claims.

**3.** Prior to 1972, Minnesota followed the Restatement (Second) of Torts in determining the duty landowners owed to licensees and invitees. Accordingly, if the court classified the plaintiff as a licensee, the court would look to the Restatement § 342 to determine the duty owed to the plaintiff by the landowner. *Dean v. Weisbrod,* 300 Minn. 37, 43, 217 N.W.2d 739, 743 (1974) (citations omitted). Similarly, if the court classified the plaintiff as an invitee, the court would look to the Re-

*Conover v. Northern States Power Co.*, 313 N.W.2d 397, 402 (Minn.1981) (citing *Peterson*, 294 Minn. 161, 199 N.W.2d 639). Therefore, an entrant's status as a "licensee" or "invitee" is not the controlling factor in determining the scope of the duty but is merely one element among many to be considered in *assessing* the landowner's duty to use reasonable care for the safety of persons invited on the premises.[4] *Bisher v. Homart Development*, 328 N.W.2d 731, 733 (Minn.1983) (emphasis added). This rule imposes the duty of reasonable care on both the landowner and the entrant. *Peterson*, 294 Minn. at 174, 199 N.W.2d at 647.

 While a landowner generally has a continuing duty to use reasonable care for the safety of all entrants, this duty is not absolute. *Baber*, 531 N.W.2d at 496. We have adopted the rule set out in Restatement (Second) of Torts § 343A (1965), which reads:

> A possessor of land is not liable to his invitee for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

*Baber*, 531 N.W.2d at 495–96 (citing *Rawleigh*, 274 Minn. at 496–97, 144 N.W.2d at 557) (quoting Restatement (Second) of Torts § 343A (1965)). The rationale underlying this rule is that, generally, " 'no one needs notice of what he knows or reasonably may be expected to know.' " *Baber*, 531 N.W.2d at 496 (quoting *Sowles v. Urschel Lab., Inc.*, 595 F.2d 1361, 1365 (8th Cir.1979)); *see also Rawleigh*, 274 Minn. at 497, 144 N.W.2d at 558 (recognizing that certain situations are so obviously dangerous that the landowner has no duty to warn of them).

We have consistently applied section 343A and have held that landowners are not liable for harm to invitees caused by known or obvious dangers unless the landowner should have anticipated the harm despite its known or obvious nature. *See Sutherland*, 570 N.W.2d at 7; *Baber*, 531 N.W.2d at 496. The Minnesota Court of Appeals has applied the language of section 343A in discussing the duty owed to licensees.[5] We believe that such application is consistent with the rule that a possessor of land owes the same duty to all entrants, regardless of their status as invitees or licensees. *See Peterson*, 294 Minn. at 174, 199 N.W.2d at 647. Before answering the question of whether appellant owed respondent a duty based on the facts in this case, we believe appellant's arguments based on special relationship precedent warrant further discussion.

---

statement § 343A to determine the duty owed to the plaintiff by the landowner. *Peterson v. W.T. Rawleigh Co.*, 274 Minn. 495, 496–97, 144 N.W.2d 555, 557–58 (1966).

4. Other factors to consider in assessing the duty owed include (1) the foreseeability or possibility of harm; (2) the duty to inspect, repair, or warn; (3) the reasonableness of inspection or repair; and (4) the opportunity and ease of repair or correction. *Bisher*, 328 N.W.2d at 733 (citing *Peterson*, 294 Minn. at 174 n. 7, 199 N.W.2d at 648 n. 7).

5. For example, in *Snilsberg v. Lake Washington Club*, the court of appeals applied section 343A to determine whether a club not opened to the public owed a licensee plaintiff a duty to warn or protect her from the harm caused by jumping off the defendant's dock into shallow water. *Snilsberg v. Lake Washington Club*, 614 N.W.2d 738, 744 (Minn.App.), *rev. denied* (Minn. Oct. 17, 2000). Similarly, in *Lawrence v. Hollerich*, the court of appeals applied section 343A and held that the defendant did not owe the plaintiff, a neighbor, a duty to warn of a hill on the defendant's land because the steepness of the hill was the only danger posed and this danger was obvious. *Lawrence v. Hollerich*, 394 N.W.2d 853, 856 (Minn.App.), *rev. denied* (Minn. Dec. 17, 1986).

Appellant urges this court to conclude that he and respondent did not have a special relationship with one another and hold that "[w]here there is no special relationship, there is no duty to protect." In support, appellant cites several of our prior decisions discussing the existence of a duty based on a special relationship. His reliance on these cases is misplaced.

■ The holdings in the cases cited by appellant focused solely on whether there was a duty based on the existence of a special relationship between the parties and did not include any discussion of whether there was a duty based on a premises liability theory. *See, e.g., Gilbertson v. Leininger,* 599 N.W.2d 127, 130–32 (Minn.1999); *H.B. ex rel. Clark v. Whittemore,* 552 N.W.2d 705, 707–08 (Minn.1996); *Harper v. Herman,* 499 N.W.2d 472, 474–75 (Minn.1993); (all holding no duty because there was no special relationship between the parties). No discussion of a duty based on a premises liability theory was warranted in these cases because the negligence claims were not based on a condition located on the defendants' land. *See, e.g., Harper,* 499 N.W.2d at 473–74 (jumping off boat into a public lake); *Whittemore,* 552 N.W.2d at 706–07 (sexual assault by resident of trailer park); *Gilbertson,* 599 N.W.2d at 128–30 (failure to seek medical assistance). To the contrary, respondent's negligence claim is based solely on a theory of premises liability; he has never claimed that appellant owed him a duty based on a special relationship.

Appellant's attempt to import the language used in the line of special relationship cases into this premises liability case lacks merit.[6] We have consistently recognized that a duty based on a special relationship theory is separate and distinct from a duty based on a premises liability theory. *See, e.g., Sutherland,* 570 N.W.2d at 7 (discussing a landowner's duty without any mention of a special relationship); *Baber,* 531 N.W.2d at 496; (discussing a landowner's duty without any mention of a special relationship); *Peterson,* 294 Minn. at 174, 199 N.W.2d at 647 (establishing the duty required of a landowner); *see also Snilsberg,* 614 N.W.2d at 744–45 (discussing the duty of care issue under separate premises liability and special relationship theories).[7] Accordingly, we hold that, where the negligence claim at issue is

6. While neither appellant nor respondent cite to *Delgado v. Lohmar,* 289 N.W.2d 479 (Minn. 1979), in their briefs, *Delgado* is cited in both *Harper* and *Gilbertson* and is essential to understanding the line of special relationship cases. In *Delgado,* this court adopted the language of the Restatement (Second) of Torts §§ 314, 315 (1965), but did not hold that an affirmative duty to act for the protection of another *only* arises if a special relationship exists between the parties. *See Delgado,* 289 N.W.2d at 483–84.

7. Recognizing that a duty based on a theory of premises liability is different than a duty based on a special relationship is consistent with the Restatement (Second) of Torts. The Scope Note for Chapter 12, Topic 7 of the Restatement explicitly recognizes that the sections within the topic, including sections 314, 314A, and 315, deal only with a part of the situations in which there is a duty of protective action. Restatement (Second) of Torts, Ch. 12, Topic 7 Scope Note. The Scope Note goes on to state that "[t]he duty of maintaining land and structures thereon in safe condition which is imposed upon the possessor and lessor by virtue of their possession or of a covenant to repair is stated in §§ 328E–379." *Id.* Therefore, while it is appropriate for this court to apply language consistent with sections 314, 314A, and 315 when it is faced with facts warranting such application, as in *Harper, Gilbertson,* and the other cases cited by appellant, it would be inappropriate for this court to apply the language of cases that have developed out of this court's adoption of these sections of the Restatement where a plaintiff's claim is based solely on a theory of premises liability.

based on a theory of premises liability, whether there is a duty owed by the landowner does not depend on the existence of a special relationship.

 We now turn to whether appellant was entitled to summary judgment on the grounds that he owed no duty to use reasonable care for the safety of respondent. This legal determination must be made before a court considers assumption of the risk. *Baber*, 531 N.W.2d at 495. If no duty existed, there is no need to determine whether respondent assumed the risk, thus relieving appellant of the duty. *See id.* In this case, there is no factual dispute as to appellant's knowledge of the condition of the premises at issue. Appellant, as possessor of the premises, installed and maintained the pool, deck, and slide and knew that one going down the slide would land in about 3 ½ feet of water. Therefore, as to conditions on appellant's land, including the swimming pool and slide, appellant had a continuing duty to use reasonable care for the safety of respondent, as an entrant on his premises. *See id.* at 495–96. Appellant would not have owed a duty, and hence not have been liable for any physical harm caused to respondent, if the danger associated with doing a headfirst belly slide was either known or obvious unless appellant should have anticipated the harm despite its known or obvious nature. *See id.* Accordingly, the district court must determine if the activity or condition involved known or obvious dangers.

According to the Restatement, "the word 'known' denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves. Thus, the condition or activity must not only be known to exist, but it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated." Restatement (Second) of Torts § 343A, cmt. b (1965). The district court did not consider this issue in this case.[8] Accordingly, we remand to the district court to determine if the respondent knew that the slide was dangerous and appreciated the probability and gravity of the threatened harm. If the court determines that the danger associated with doing a headfirst belly slide was not a "known" danger, then the court must also consider whether there was an obvious danger.

 Under both our case law and the Restatement, the test for what constitutes an "obvious" danger is an objective test: the question is not whether the injured party actually saw the danger, but whether it was in fact visible. *Munoz v. Applebaum's Food Market, Inc.*, 293 Minn. 433, 434, 196 N.W.2d 921, 922 (1972). According to the Restatement, a condition is not "obvious" unless both the condition and the risk are apparent to and would be recognized by a reasonable man "in the position of the visitor, exercising ordinary perception, intelligence and judgment." Restatement (Second) of Torts § 343A, cmt. b (1965).

We are mindful of the fact that certain conditions have been held to involve dangers so obvious that no warning was necessary, including walking into a low hanging branch, walking down a steep hill, walking into a large planter, walking across a 20–

---

8. While the district court held that there was a genuine issue of material fact as to whether respondent knew and appreciated the risk associated with doing a headfirst belly slide, it made this determination when considering primary assumption of the risk. The question of whether a condition or activity was known for purposes of determining whether a duty was owed is generally a question for the court to determine as a matter of law. *See Larson,* 373 N.W.2d at 289.

foot square pool of water, and skydiving over a lake. *See Baber,* 531 N.W.2d at 496 (citations omitted). However, we also recognize that the rationale underlying the rule eliminating a duty where the dangers are known or obvious is that "no one needs notice of what he knows or reasonably may be expected to know." *Id.* (quoting *Sowles,* 595 F.2d at 1365). In each of the above cases, the danger associated with the condition at issue was found to be clearly visible, or in plain view, meaning the condition itself posed the obvious danger. *See Bisher,* 328 N.W.2d at 733–34; *Hammerlind v. Clear Lake Star Factory Skydiver's Club,* 258 N.W.2d 590, 593–94 (Minn.1977); *Munoz,* 293 Minn. at 434, 196 N.W.2d at 922; *Sperr v. Ramsey County,* 429 N.W.2d 315, 317–18 (Minn.App.1988); *Lawrence,* 394 N.W.2d at 856. In this case, the district court failed to consider whether the danger associated with the condition and the risk at issue involved such an "obvious" danger. Accordingly, we choose not to answer this question. Instead, we remand to the district court to determine whether the anticipated harm to respondent from using the slide to execute a headfirst belly slide was a harm that was either known to him or one that he reasonably should have been expected to know.

▮ If the district court concludes that the danger was neither known nor obvious as a matter of law, it must hold that appellant was not relieved of his duty to use reasonable care for the safety of respondent.[9] If the court concludes that the danger was either known or obvious as a matter of law, it must then decide whether appellant should nevertheless have anticipated the harm despite its known or obvious danger. Lastly, if the court finds that appellant owed respondent a duty, the jury should then be allowed to decide the primary assumption of risk question since the court has already held that a genuine issue of material fact exists as to this issue. We affirm the judgment of the court of appeals on the reasoning stated herein and remand to the district court.

Affirmed and remanded.

---

9. The jury may then consider the following factors in assessing whether reasonable care was exercised by appellant: (1) the circumstances under which respondent entered appellant's land (for what purpose); (2) the foreseeability or possibility of harm; (3) appellant's duty to inspect, repair or warn; (4) the reasonableness of inspection or repair; and (5) the opportunity and ease of repair or correction. *See Bisher,* 328 N.W.2d at 733 (citing *Peterson,* 294 Minn. at 174 n. 7, 199 N.W.2d at 648 n. 7). *See also* 4A Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Civil,* CIVJIG 85.28 (4th ed.1999) (discussing how *Peterson* set out a nonexclusive list of factors that might be considered in determining whether reasonable care was exercised.)